## CHICAGO, R. I. & P. R. CO. v. BAHR.

No. 6341—Opinion Filed March 30, 1920.

(Syllabus by the Court.)

1. **Waters and Water Courses—Flowage—Liability for Injuries—Act of God.**

An unprecedented rainfall and resulting flood, to excuse liability as an "act of God," must not only be the proximate cause of the injury, but it must be the sole cause. If the injury occasioned by an "act of God" would not have occurred except for the negligence of the defendant co-operating therewith as an efficient and contributing cause, the defendant will be liable.

2. **Same—Liability of Railroad—Necessity for Notice.**

Where a railroad company operates a railroad under a lease, and prior to the execution of the lease there had been constructed upon the right of way bridges and embankments, which, because of being insufficient to carry off the waters of the water course, crossed

by said railroad, in times of ordinary flood, obstructed such waters and caused them to overflow adjacent lands to their damage, so as to constitute a nuisance, and said railroad company had knowledge of the insufficiency of such bridge and embankments, or should have known of such insufficiency from facts of which it had knowledge, no notice and request to abate the nuisance is required to make the railroad company liable for injuries occasioned thereby.

3. **Action—Injuries from Flowage—"Permanent" Condition—Successive Causes of Action.**

In a suit for damages resulting to crops from a negligent condition in the construction and maintenance of a railroad bridge and embankments, even though such structures be permanent in their nature, such negligent condition will not be held permanent if it is abatable by an expenditure of either labor or money, and the abatement of such causal negligent condition is consistent with the rightful use and maintenance of the structures; and a cause of action for damages occasioned by negligence in a structure not permanent under this rule, arises at the time of the actual injury, and successive actions may be maintained for successive injuries in such a case.

Error from District Court, Alfalfa County; James B. Cullison, Judge.

Action by A. H. Bahr against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

R. J. Roberts, C. O. Blake, W. H. Moore, and John E. DuMars, for plaintiff in error.

A. R. Carpenter and A. J. Titus, for defendant in error.

BAILEY, J. The defendant in error, hereinafter styled plaintiff, commenced this action in the district court of Alfalfa county, against plaintiff in error, hereinafter styled defendant, on the 19th day of December, 1911. Subsequently, leave of the court having been obtained, on the 19th day of September, 1912, amended petition was filed praying for damages in the sum of $1,037, for injury to crops, alleging that such injuries occurred in the month of August, 1911, and that such injuries and damages were occasioned by reason of the waters of Driftwood creek overflowing the lands and premises of said plaintiff, and that said overflow and damages were occasioned and caused by reason of the negligent construction of the grades, embankments, and bridges of the defendant. The plaintiff alleged that the railroad and roadbed of the defendant company built across Driftwood creek and the valley and land adjacent, including plaintiff's land, was built without bridges of sufficient size to carry the waters flowing naturally down and along said creek

in times of high water, and that such construction of said railroad caused said waters to be dammed up against said grade and embankment and to overflow the land adjacent, including the lands of plaintiff; that the defendant company had notice and knowledge of its negligence, and had been requested to abate said condition and nuisance, but it had wholly failed and refused so to do.

Defendant's answer alleges that it leased the railroad in question in the year of 1904, from the Choctaw, Oklahoma & Gulf Railway Company, said railroad having prior to that date been built and constructed, and that said defendant since leasing said road had maintained said railroad, bridges, and roadbed and embankments in the same condition as when built, and alleges as a defense to plaintiff's claim that, if plaintiff suffered any damage as claimed, it was caused by reason of and at the time of the building and construction of said railroad, and that said injuries were and are of a permanent nature, for which recovery is barred by the statutes of limitation; second, that defendant, as lessee of said railroad, had not at any time had notice that said embankments and bridges were improperly constructed; and third, that the flooding in question was caused by an unprecedented rain which human foresight was unable to guard against and was an act of God, for which this defendant was not responsible. The issues thus joined, on the 26th day of November, 1913, a trial was had in the district court of Alfalfa county. The issues as joined being tried to a jury, and a verdict and judgment had for plaintiff in the sum of $550, from the judgment defendant appeals.

It is first contended that the judgment is not sustained by sufficient evidence. The testimony of the witnesses presented in the record in this case is explained by maps, plats, and a cement model, showing the nature and character and general topography of the section of country drained by Driftwood creek. Such model and plats also explain the testimony of the witnesses relative to the elevations of various points, and the direction of the natural drainage of the lands upon which the crops alleged to have been destroyed were growing. It being impracticable to readily describe such maps, plats, and model, even if any good purpose would be subserved, to present sufficient evidence to render clear the situation would require an unreasonable amount of space. Under such circumstances, we content ourselves with the statement that we think the evidence, fairly considered, warranted the jury in finding that had there been no obstruction to the flow of waters of Driftwood creek, the lands of plaintiff would not have overflowed so as to occasion the dam-

ages of which complaint is made; and we are also of the opinion that the evidence was sufficient to authorize the court to submit to the jury the question as to whether or not the damage alleged by plaintiff was occasioned by the negligent construction of defendant's bridges and roadbed adjacent thereto.

Defendant next complains of instruction No. 6, and with reference to such contention defendant in its brief says:

"We believe the court erred in overruling the motion for a new trial. We think the plea of an act of God was amply sustained by the evidence, and that the instructions which were not in harmony therewith were erroneous, and that the evidence fully justifies the defendant's motion for an instructed verdict upon this ground."

In so far as the effect of the evidence is concerned, the observation hereinabove made is a sufficient suggestion as to whether the cause should have been submitted to the jury under proper instructions. Upon this phase of the case, the court instructed the jury as follows:

"No. 6. You are further instructed that an 'act of God,' such as an unprecedented rainfall and resulting flood, which will excuse from liability, must not only be the proximate cause of the loss, but it must be the sole cause. If, however, the injury is caused by an act of God, commingled with the negligence of the defendant as an efficient and contributing cause, and the injury would not have occurred except for such negligence, the defendant would be liable.

"And you are further instructed that whether the flood of August 5, 1911, which plaintiff claims damaged his property, was an ordinary flood or an extraordinary flood, so unusual and unprecedented in its nature as to amount in law to an act of God, thus relieving the defendant of all liability, are questions for the jury to decide; and, if you find from the evidence that the flood in question was so unusual and unprecedented that its extent and resulting effects could not have been reasonably anticipated and provided against by an ordinary careful person in defendant's situation, then the defendant is not liable in damages caused thereby unless you further find from the evidence that, even though such flood was in law an act of God, such injury would not have occurred except for the negligence of the defendant in maintaining the bridge across Driftwood creek, and the roadbed adjacent thereto, in such a condition as to obstruct the natural flow of the water in time of ordinary floods, and that such negligence was an efficient and contributing concurring cause of the injury, then and in that event the defendant is liable for such injuries as may have been proven in the case."

This identical instruction was considered by this court in Chicago, R. I. & P. R. Co. v. Morton, 57 Okla. 711, 157 Pac. 917, in connection with conditions and circumstances in all material respects identical with those presented in the instant case, and for the reasons set forth in that opinion, we hold that the trial court committed no error in giving such instruction.

It is next contended that the defendant, Chicago, R. I. & P. Ry. Co., as lessee of the Choctaw, Oklahoma & Gulf Railway Company, had not at the time of such alleged damages had notice that such embankments and bridges were improperly constructed. It was admitted under the evidence that the Chicago, R. I. & P. Ry. Co. became the lessee and took charge of the operation and management and was in control of said line of railway in 1904. It was also in evidence that at various times and intervals floods of more or less severity had occurred subsequent to the leasing of said railroad by defendant, and complaint had been made to defendant's agents and representatives of such conditions as resulted therefrom, and that likewise the employes of the defendant company, prior to the time of the injury complained of in this action, had had occasion to note and observe overflow waters from Driftwood creek. Considering this identical situation and the evidence of notice as is now presented for consideration of this court, the court, in Chicago, R. I. & P. R. Co. v. Morton, supra, said:

"Where a railroad company operates a railroad under a lease and prior to the execution of the lease there had been constructed upon the right of way a bridge and an embankment which because of a water course, crossed by said railroad, in times of ordinary flood, obstructed such waters and caused them to overflow adjacent lands to their damage so as to constitute a nuisance, and said railroad company had knowledge of the insufficiency of such bridge and embankments, or should have known of such insufficiency from facts of which it had knowledge, no notice or request to abate the nuisance is required to make the railroad company liable for injuries occasioned thereby." Martin v. Chicago, R. I. & P. R. Co., 81 Kan. 344, 105 Pac. 451.

The last contention of defendant is that the railroad in question was leased by defendant company in the year 1904, said railroad having prior to that date been constructed by the Choctaw, Oklahoma & Gulf Railway Company, and that said defendant since leasing said road has maintained the bridges, roadbeds, and embankments in the condition as when built, and that if plaintiff suffered damages by reason of the construction of said bridges, roadbeds, and embankments, the said bridges and embankments were and are of a permanent nature and that recovery is barred by the statute of limitation. This court has had frequent occasion to consider the right

to recover for injuries and damages to crops occasioned by alleged negligent construction of railroad bridges and embankments, and this court is committed to the rule that, regardless of the question of the permanency of the improvements, the right of action for damages does not necessarily accrue at the time of the construction of the improvement. In Pahlka v. Chicago, R. I. & P. R. Co., 62 Oklahoma, 161 Pac. 544, it is held:

"In cases of injuries resulting from permanent improvements, as to the time when the right of action arises, the distinction seems to be that when the injury is the natural result of the erection of the permanent improvements or may be regarded as obviously consequential the cause of action arises at the time of the construction of the improvements, but when the injury is not such natural result, or not obviously consequential, the right of action arises at the time of the actual injury. The line of cleavage seems to lie in the certainty or uncertainty of the injurious result."

Ruling Case Law, vol. 17, page 789, states the rule as follows:

"In the case of railroad embankments there are frequently present elements of uncertainty, such as the insufficiency of the opening, which, the presumption may be indulged, the railroad might at any time in the future sufficiently enlarge rather than submit in the first action to the recovery of all the consequential damages. In the second place, where the damage is to crops, it may depend entirely upon the possibility of the nonrecurrence of the over-running flood in any given year, or the contingency of no crop being planted thereon, or being cultivated in a product subject to little damage from a temporary overflow. In this class of cases the damage cannot be estimated at the time the structure is erected, because of the uncertainty of the extent of the injury, if any should result. Under these circumstances the general rule seems to be that the statute will begin to run from the time of the injury sustained." Gulf, C. & S. F. R. Co. v. Mosley, 161 Fed. 72, 20 L. R. A. (N. S.) 775; City of Ardmore v. Orr, 35 Okla. 305, 129 Pac. 867; Pahlka v. Chicago, R. I. & P. R. Co., supra.

But it has also been held by this court "that where a cause of an injury is abatable, either by an expenditure of labor or money, it will not be held permanent," and "where not permanent, the statute of limitation does not begin to run until the injury is suffered." St. Louis & S. F. R. Co. v. Ramsey, 37 Okla. 449, 132 Pac. 478; Pahlka v. Chicago, R. I. & P. R. Co., supra; Ponca Refining Co. v. Smith, 72 Oklahoma, 174 Pac. 268.

The cause of action is not barred, and our attention having been called to no error that would warrant a reversal of this cause, the judgment is affirmed.

PITCHFORD, JOHNSON, McNEILL, and HIGGINS, JJ., concur.